UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RILTON HARRY,

                                        Plaintiff,

             - against -

THE CITY OF NEW YORK, P.O. JOSE FERNANDEZ
[SHIELD #626], SERGEANT SHARETTE DELISSER
[SHIELD #1018], P.O. JESSICA TORRES [SHIELD
#1909], AND JOHN DOE AND JANE DOE (THE NAMES
JOHN AND JANE DOE BEING FICTITIOUS, AS THE
TRUE NAMES ARE PRESENTLY UNKNOWN),

                                        Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' RESPONSE
TO PLAINTIFF'S RULE
56.1(B) STATEMENT AS
TO ADDITIONAL
MATERIAL FACTS**


20-CV-05951 (GBD) (SN)

             Defendants the City of New York, Sharette Delisser, Jose Fernandez, and Jessica

Torres (collectively, "Defendants") submit this response to "Plaintiff's Rule 56.1(B) Statement as

to Additional Material Facts" (Dkt. No. 60, p. 5) as follows:[1]

             30.       On May 21, 2018, at approximately 4:55 p.m., plaintiff was arrested by defendants.

(RH 50h at 8:19-9:1-2; RH Dep. at 25:15-26:1-13; Am. Compl. at 3 ¶ 16; Uzoh Decl., Ex. 16.)[2]

**RESPONSE:**             Admit that on May 21, 2018, at approximately 4:55 p.m., Plaintiff was

arrested, but clarify that only Officer Fernandez arrested Plaintiff. (See Declaration of Ugochukwu

Uzoh ("Uzoh Decl.") Ex. 16, Arrest Report.)

---

[1] Defendants adopt the facts set forth herein only for purposes of the motion for summary judgment and
reserve the right to present different and/or conflicting facts at trial in this matter. See Vasconcellos v. City
of New York, 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015)
(Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering
any prejudice – the 'admission'….neither binds the party going forward if the motion is denied nor can it
be admitted in evidence at trial").

[2] Plaintiff began his "Rule 56.1(b) Statement as to Additional Material Facts" at paragraph number "30."
(See Dkt. No. 60, p. 5.) Thus, the Defendants are also beginning their Counter Statement at Paragraph
number "30."

31.     In addition to others, Fernandez, Delissa, and Torres were involved in the arrest -- with Fernandez identified as the assigned arresting officer, Torres, his partner, and Delissa, their partner and supervisor who was on-scene and actually arrested the plaintiff and also directed and verified the plaintiff's arrest. (JF Dep. 18:25-19:1-3; 37:23-38:1-3; SD Dep. 45:21-46:1-11; 75:22-76:1-8, JT Dep. 30:20:31:1-7; Uzoh Decl., Ex. 13-17.)

**RESPONSE:**     Admit only that Officer Fernandez was the arresting officer and Sgt. Delisser[3] verified Plaintiff's arrest. (See Uzoh Decl. Ex. 16, Arrest Report.) However the evidence cited by Plaintiff does not further support the assertion. Rather, the evidence cited refers to (a) Officer Fernandez's testimony that, "Sergeant Deliss[er] was [his] direct supervisor"; (b) Sgt. Delisser's testimony that, *inter alia*, she asked the Plaintiff to "come back upstairs with" her, "verified the arrest on scene," and "instructed Officer Fernandez, to place the individual under arrest"; (c) Officer Torres' testimony that, Jose Fernandez was the arresting officer and that she "[p]robably [conversed with him] to the extent of positive results on a showup," but, "[o]ther than that, [she] d[id]n't have any specifics"; (d) portions of Sgt. Delisser's memo book entries, which note that, in sum, she observed Plaintiff fitting the description that was broadcasted on the radio; (e) a Stop and Frisk Report concerning an irrelevant non-party; (f) a Stop and Frisk Report concerning Plaintiff, noting that, *inter alia*, a "show-up was conducted with positive identification"; (g) an Arrest Report concerning Plaintiff's May 21, 2018 arrest, which notes, *inter alia*, that Officer Fernandez was the arresting officer and Sgt. Delisser was the "supervisor approving"; and (h) an Omniform Complaint concerning Plaintiff's May 21, 2018 arrest, which notes, *inter alia*, that Officer Fernandez was the arresting officer and Sgt. Delisser was the

---

[3] Plaintiff has, for the entirety of this lawsuit, incorrectly referred to Sgt. Delisser as "Delissa." Defendants hereby clarify, once again, that the correct name is "Delisser."

"supervisor approving." (<u>See</u> Uzoh Decl. Ex. 5, 37:23-38:1-3; <u>see</u> <u>also</u> Uzoh Decl. Ex. 6, 45:21-46:1-11; 75:22-76:1-8; Uzoh Decl. Ex. 7, 30:20:31:1-7; <u>see</u> <u>also</u> Uzoh Decl., Exs. 13-17.)

32.     Following his arrest, defendants charged plaintiff under New York law with PL 155.30(1) 'Grand larceny in the fourth degree' and N.Y. PL 140.35 'Possession of burglar's tools'. (Uzoh Decl., Ex. 16.)

**RESPONSE:**     Admit that on May 21, 2018, Plaintiff was arrested and charged with 155.30(1) "Grand larceny in the fourth degree" and N.Y. PL 140.35 "Possession of burglar's tools," but clarify that only Officer Fernandez was the "arresting officer" and Sgt. Delisser was the "supervisor approving" the arrest. (<u>See</u> Uzoh Decl. Ex. 16.)

33.     Both Fernandez and Delissa were involved in the decision to charge plaintiff with crimes which Delissa seems to attribute to the value of the reportedly stolen items. (JF Dep. 89:21-92:1; SD Dep. 90:3-92:1-2; Uzoh Decl., Ex. 16.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support the assertion. Rather, the evidence cited refers to (a) Officer Fernandez's testimony that he charged Plaintiff "based on the information that [he] obtained from the reporter/witness" and (b) Sgt. Delisser's testimony that, *inter alia*, "Officer Fernandez was the arresting officer" and her explanation that Plaintiff was charged in accordance with the Penal Code due to the value of the items taken. (<u>See</u> Uzoh Decl. Ex. 5, 89:21-92:1; <u>see</u> <u>also</u> Uzoh Decl. Ex. 6, 90:3-92:1-2; <u>see</u> <u>also</u> Uzoh Decl., Ex. 16.)

34.     Plaintiff, however, did not steal any property, was not in possession of any burglar's tools, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made. (RH 50h at 15:4-7, 16:1-3; RH Dep. at 76:21-77:1-15.)

**RESPONSE:**          Deny, but this is not a material fact because the officers were informed by complaining witness Cuzco that Plaintiff, a male, wearing a white and blue sweater and who had with him an H&M bag, was one of the perpetrators. (See Delisser Dep. at 47:20-48:13, annexed to Pellegrino Declaration ("Pellegrino Decl.") as Ex. C; see also ICAD at DEF 096, annexed to Pellegrino Decl. as Ex. A; see also Cuzco Feb. Dep. at 94:7-95:9, annexed to Pellegrino Decl. as Ex. F; see also March 17, 2022 Cuzco March Dep. at 91:10-21, annexed to Pellegrino Decl. as Ex. G.)

35.          Rather, prior to the arrest, plaintiff had briefly stopped at Urban Outfitters, a clothing store, located at 162 2nd Avenue, New York, New York ("store"), to browse its Men's clothing brands. (RH 50h at 9:23-10:1-3, 18:6-12; RH Dep. at 30:24-31:1-13, 36:21-37:1-17, 40:3-17.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

36.          Plaintiff was originally returning his ex-girlfriend's leggings to Adidas. (RH Dep. at 28:13-30:1, 42:21-43:1-3; 86:9-12.)

**RESPONSE:**          Admit that Plaintiff so testified but this is not a material fact.

37.          Plaintiff, who resides in Brooklyn, New York, went to Manhattan alone on May 21, 2018, entered into the store alone, and was not in the company of any individual at any time during his trip to Manhattan on May 21, 2018. (RH 50h at 3:8-14, 9:20-22; RH Dep. at 7:1-6, 34:3-25.)

**RESPONSE:**          Admit that Plaintiff so testified but note that it contradicts the testimony of non-party witness Cuzco, who testified that Plaintiff entered the store with a group of individuals. (See Uzoh Decl. Ex. 8, 55:2-18.) In any event, this is not a material fact.

38.     Plaintiff did not meet with nor speak to any individual at the store except for a store clerk who he asked for the price of an item. (RH Dep. at 41:14-21.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

39.     Plaintiff did not have anything with him at all relevant times except for an H&M bag containing his ex-girlfriend's leggings which he was returning to Adidas. (RH Dep. at 35:21-36:1-20, 42:21-43:1-3.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

40.     Plaintiff did not buy anything and did not touch any of the store's items while inside the store. (RH Aff. ¶ 1; RH Dep. at 40:18-41:1-13.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

41.     Plaintiff was inside the store for approximately five minutes. (RH Dep. at 34:9-15.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

42.     While inside the store, Cuzco, a white Hispanic male, was noticeably monitoring the plaintiff and following him around. (RH Dep. at 36:21-40:1-17, 41:25-42:1-12, 45:20-49:1-9.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

43.     As a result, plaintiff who is of black descent, felt uncomfortable, believed, and still believes, that he was racially profiled, and was forced to leave the store. (RH Dep. at 36:21-40:1-17, 41:25-42:1-12, 45:20-49:1-9; Am. Compl. at 8 ¶ 76.)

**RESPONSE:**          Admit that Plaintiff so testified, and further clarify that non-party witness Cuzco testified that "the males were trying to grab stuff, but they realized that [he] w[as] looking at them." (See Uzoh Decl. Ex. 8, 88:7-11.) In any event, this is not a material fact.

44.     The store is known to racially profile individuals who are members of racial/ethnic minority groups particularly African Americans. (Uzoh Decl., Ex. 18.)

**RESPONSE:**          Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). Further, the evidence cited by Plaintiff does not wholly support this assertion. The cited evidence of a purported news article does not affirmatively state that "[t]he store is known to racially profile individuals" and, instead, notes, *inter alia*, that there was an apparent policy change because a prior policy "allegedly resulted in the racial profiling of customers." (See Uzoh Decl., Ex. 18.) In any event, this is not a material fact.

45.     The store frequently calls the police numerous times on each and every week complaining about shoplifting. (RB Dep. at 23:8-25:1-2.)

**RESPONSE:**          It is unclear what evidence Plaintiff is citing to in an attempt to support this contention. In any event, this is not a material fact.

46.     Plaintiff was arrested almost immediately after he left the store. (RH 50h at 10:4-19; RH Dep. at 42:21-51:1-3.)

**RESPONSE:**          Admit that Plaintiff so testified, but this is not a material fact.

47.     According to defendants, Cuzco did numerous[sic] place 9-1-1 telephone calls on May 21, 2018. (Pellegrino Decl., Ex. A.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD indicates that, at around 4:42 p.m. on May 21, 2018, non-party witness Cuzco called 9-1-1 to report a larceny in progress. (See ICAD at DEF 093-95, annexed to Pellegrino Decl. as Ex. A.)

48.     Pursuant to the ICAD, Cuzco indicated that five black males and a black female entered the store on May 21, 2018, at approximately at 4:40 p.m. (Pellegrino Decl., Ex. A at DEF 93-95.)

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD indicates that, at around 4:42 p.m. on May 21, 2018, non-party witness Cuzco called 9-1-1 and reported that 5 males and a female "stole merchandise" at Urban Outfitters. (See ICAD at DEF 093-95, annexed to Pellegrino Decl. as Ex. A.) Furthermore, the ICAD reflects that Cuzco described, *inter alia*, that the female was black and that three of the males were black. (See id. at DEF 093-101.)

49.        While the ICAD shows that Cuzco did complain that the store's merchandise was stolen, it is not clear from the ICAD as to who stole the merchandise. (Pellegrino Decl., Ex. A at DEF 94.)

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD indicates that 5 males and a female were perpetrators of a larceny, *i.e.*, involved in "st[ealing] merchandise" at Urban Outfitters and notes a description for four of the five perpetrators. (See ICAD at DEF 093-95, annexed to Pellegrino Decl. as Ex. A.)

50.        However, the ICAD clearly indicates that Cuzco reported that "4 PERPS" fled towards 11th Street. (Pellegrino Decl., Ex. A at DEF 94.)

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD indicates that "PERPS FLED.. TOWARDS 1 AVE... MB.. TALL 6X3... WHT/BLU SWEATER WITH H AND M BAG" and that the other "4 PERPS WENT TOWARDS 11 ST." (See ICAD at DEF 094, annexed to Pellegrino Decl. as Ex. A.)

51.        The ICAD also indicates that Cuzco described a black female who looked like a male, a black male with a black hat wearing a sweat suit all black lime green stripes, a black male wearing a red t-shirt and short with black stripes on it, and a tall black male wearing a white/blue sweater with H&M bag. (Pellegrino Decl., Ex. A at DEF 94-95.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD also indicates that (a) a black female was wearing a black denim jacket, black baseball cap, and white shirt, and looked like a male, (b) an unspecified person was wearing "boxers under jeans," (c) 1 black male was wearing a black hat and an all-black sweatsuit with lime-green stripes, (d) there was a short black male wearing a red t-shirt, and (e) an unspecified item had black stripes on it.  (See ICAD at DEF 094, annexed to Pellegrino Decl. as Ex. A.) In any event, this is not a material fact.

52.          But it is not clear from the ICAD as to what exactly the black female and the above-described black males did. (Pellegrino Decl., Ex. A at DEF 94-95.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the cited evidence of the ICAD indicates that the perpetrators were involved in a stealing merchandise. (See ICAD at DEF 094-101, annexed to Pellegrino Decl. as Ex. A.) In any event, alleged facts concerning other individuals involved in the larceny besides Plaintiff are not material facts.

53.          Cuzco did however prepare a contemporaneous report documenting the shoplifting incident which is entitled Shoplift Apprehension Case Profile Report ("incident report"). (MC Feb. Dep. at 70:14-74:1-23, 77:9-78:1; Uzoh Decl., Ex. 19.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. For example, there is no evidence to corroborate Plaintiff's contention that the report was made contemporaneously. Rather, the cited evidence of (a) the Shoplift Apprehension Case Profile Report reflects an "Apprehension Time" of 4:55 pm and (b) Cuzco's testimony is of, *inter alia*, Cuzco being shown the first page of the Shoplift Apprehension Case Profile Report and Cuzco testifying, "I never saw this before" and, upon being shown the second page of the same report,

testifying that the reflected time of 4:55 p.m. was "probably" when he "did the report." (See Uzoh Decl., Ex. 8 at 70:14-74:1-23, 77:9-78:1; see also Uzoh Decl., Ex. 19.) In any event, this is not a material fact.

54.     According to the incident report, six African Americans, comprising five males and a female, entered the store on May 21, 2018, at approximately 4:40 p.m. (Uzoh Decl., Ex. 19 at DEF 118.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support this assertion. Rather, cited evidence of the Shoplift Apprehension Case Profile Report does not reflect that the individual entered the store "at approximately 4:40 p.m." (See Uzoh Decl., Ex. 19.) In any event, this is not a material fact.

55.     Cuzco stated that he "saw one of the male[s] that was wearing a black t shirt and black pants with the duffle bag and the female with the gray sweater with a flag in front holding a large H&M bag [go] to the women's tTommy[sic] Hilfiger section and sweep the table and the shelf of the merchandise[s], and concealed in their bags then they ran out." Id.

**RESPONSE:**     Admit that the Shoplift Apprehension Case Profile Report so states, but this is not a material fact.

56.     Cuzco also stated that the remaining males "were trying to grab stuff but they realized [he] was looking at them." Id.

**RESPONSE:**     Admit that the Shoplift Apprehension Case Profile Report so states, but this is not a material fact.

57.     Cuzco then described the tall male wearing a white/blue sweater with H&M bag and stated that he observed said tall male grab a bunch of Kappa merchandise but gave them back to the manager. (Uzoh Decl., Ex. 19 at DEF 118.)

**RESPONSE:**          Admit that the Shoplift Apprehension Case Profile Report so states, but this is not a material fact.

58.      Cuzco stated that the tall male left the store after he gave back the Kappa merchandise to the manager and that the other males who tried to grab stuff also left the store "without any further incident." Id.

**RESPONSE:**          Admit that the Shoplift Apprehension Case Profile Report so states, but this is not a material fact.

59.      Cuzco indicated in the incident report that he called the police after the individuals left the store to report the shoplifting incident and that the police came "right away," and that he gave them a description and photos of the shoplifters. See id.

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, cited evidence of the Shoplift Apprehension Case Profile Report notes that Cuzco "gave them the description and their photos of the shoplifters and [I] got into the car to positive identify them." (See Uzoh Decl., Ex. 19.) In any event, this is not a material fact.

60.      Cuzco concluded the incident report by noting that the defendants subsequently stopped and arrested the tall black male wearing a white/blue sweater with H&M bag -- i.e., the plaintiff -- and that he Cuzco apparently went to the precinct to fill out some kind of report. See id.

**RESPONSE:**          Admit that the Shoplift Apprehension Case Profile Report so states, but this is not a material fact.

61.      Cuzco did indeed go to the precinct with the police on the same day the plaintiff was arrested by defendants -- i.e., May 21, 2018. (MC Feb. Dep. at 7:18-11:1-19, 99:19-101:1-9; MC Mar. Dep. at 67:12-68:1-22.)

10

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to Cuzco's (a) February 2022 testimony where he initially testified that, after driving with police, he was "dropped off back to the store" and that he could not "recall if" he went back to the precinct, but later testified that he went to the precinct to fill out a report (Uzoh Decl., Ex. 8 at 7:18-11:1-19, 99:19-101:1-9) and (b) March 2022 testimony where testified that he might have gone to the precinct and that a document that was not created by him appears to suggest that he went to the precinct (Uzoh Decl., Ex. 9 at 67:12-68:1-22). In any event, this is not a material fact.

62.   However, Cuzco did not fill out any report on May 21, 2018. (MC Feb. Dep. at 100:12-101:1-9.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to Cuzco's testimony where, after being asked, "do you recall the report that you filled out at the precinct?" he responded, "[i]t was something similar like on top, then maybe, yeah, I think so." (Uzoh Decl., Ex.8, at 100:12-101:1-9.) In any event, this is not a material fact.

63.   Cuzco merely provided information to the police at the precinct as to what he might have observed on May 21, 2018, which is exactly the information that he did document in the incident report. (MC Feb. Dep. at 100:12-101:1-9.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited makes no mention of what "exact[] information" Cuzco told the police, does not clarify that Cuzco or counsel were referring to the Shoplift Apprehension Case Profile Report during this part of the testimony, and instead, seems to regard a "report that [Cuzco] filled out at the precinct." (Uzoh Decl., Ex.8, at 100:12-101:1-9.)

64.     Specifically, Cuzco informed the police that he observed only two individuals -- a black male and a black female -- steal merchandise at the store and run away with the stolen merchandise. (MC Feb. Dep. at 98:24-99:1-8.)

**RESPONSE:**     The evidence cited by Plaintiff <u>does</u> <u>not</u> support this assertion. Rather, the evidence cited refers to Cuzco's testimony where he does not testify about conversations with police and, instead, Cuzco discusses what was written in the Urban Outfitter Shoplift Apprehension Case Profile Report and was responding to Plaintiff's counsel's question that began with, "based on your report." (<u>See</u> Uzoh Delc., Ex. 8 at 98:24-99:1-8.)

65.     Nothing in the incident report indicates that Cuzco observed the plaintiff steal any items or merchandise or, in any way, assist any individual to steal any items or merchandise at the store. (MC Mar. Dep. at 94:10-18; Uzoh Decl., Ex. 19 at DEF 118.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to (a) Cuzco's testimony where he replied "no" after being asked, "[y]ou did not observe that person remove Tommy Hilfiger items, correct?" (Uzoh Delc., Ex. 9, at 94:10-18) and (b) the Urban Outfitter Shoplift Apprehension Case Profile Report that describes, *inter alia*, a group of individuals, including Plaintiff, enter the store and both attempting to, and actually, stealing items and using H&M bags to transport the stolen items (<u>See</u> Uzoh Delc., Ex. 19 at DEF 018). In any event, this is not a material fact.

66.     In fact, Cuzco merely observed the plaintiff at the store and, for whatever reason, wrongly assumed that he entered the store with some other individuals. (MC Mar. Dep. at 94:6-9.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to Cuzco's testimony where he testified that he believed that

Plaintiff "was in the store with other individuals." (Uzoh Delc., Ex. 9, at 94:6-9.) In any event, this is not a material fact.

      67.    But the incident report indicates that the plaintiff was by himself at the store since it indicates that the black male and black female stole merchandise and ran out on their own while the remaining black males attempted to steal but ended up not stealing any merchandise because Cuzco was looking at them. (Uzoh Decl., Ex. 19 at DEF 118.)

**RESPONSE:**      The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers the Urban Outfitter Shoplift Apprehension Case Profile Report that describes, *inter alia*, a group of individuals, including Plaintiff, enter the store and both attempting to, and actually, stealing items and using H&M bags to transport the stolen items. (See Uzoh Delc., Ex. 19 at DEF 018.) In any event, this is not a material fact.

      68.    The incident report merely indicated that the plaintiff grabbed Kappa merchandise but gave them back to the manager. See id.

**RESPONSE:**      The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers the Urban Outfitter Shoplift Apprehension Case Profile Report that describes, *inter alia*, that "[t]he other males were trying to grab stuff but they realized i was looking at them and the tall male wearing the white and blue sweater with a blue Champion baseball cap with a large H&M bag [*i.e.*, Plaintiff] grabbed a bunch of Kappa merchandises but of the the[sic] manger was next to him and he gave it back to the manager." (See Uzoh Delc., Ex. 19 at DEF 018.) In any event, this is not a material fact.

      69.    Cuzco did not know whether or not the plaintiff and the manager had any discussions at the time and did not know whether or not the plaintiff had planned to buy the Kappa merchandise. (MC Mar. Dep. at 16:18-19:1-10, 55:7-13.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to Cuzco's testimony where he replied, "[y]eah. You could say that, yeah" after being asked, "[i]s it fair to say that you did not observe the tall individual try to walk out of the store with the merchandise he had with him but at some point before the exit he gave back the items to the manager?" (Uzoh Delc., Ex. 9, at 55:7-13.) In any event, this is not a material fact.

70.     Information included in the incident report is in many respects similar to information contained in the ICAD and both documents help clarify that the plaintiff was not involved with the six African Americans who reportedly entered the store together as a group. (Pellegrino Decl., Ex. A at DEF 94; Uzoh Decl., Ex. 19 at DEF 118.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to the (a) ICAD, which indicates, *inter alia*, that 5 males and a female were perpetrators to a larceny, *i.e.*, involved in "st[ealing] merchandise" at Urban Outfitters and describes one of the perpetrators as the Plaintiff, *i.e.*, "...MB.. TALL 6X3... WHT/BLU SWEATER WITH H AND M BAG" (see Pellegrino Decl., Ex. A) and (b) Urban Outfitter Shoplift Apprehension Case Profile Report, which describes, *inter alia*, that "[t]he other males were trying to grab stuff but they realized i was looking at them and the tall male wearing the white and blue sweater with a blue Champion baseball cap with a large H&M bag [*i.e.*, Plaintiff] grabbed a bunch of Kappa merchandises but of the the[sic] manger was next to him and he gave it back to the manager." (See Uzoh Delc., Ex.19 at DEF 018.) In any event, what is written in the Urban Outfitter Shoplift Apprehension Case Profile Report are not material facts.

14

71.     It is clear from the incident report and the ICAD that the plaintiff was not the male

with the duffle bag who, together with the female, stole and concealed merchandise in their bags

and fled. See id.

**RESPONSE:**        Admit that the evidence so states that Plaintiff, while still a part of the group

that stole items, was not specifically the male possessing a duffle bag. (Pellegrino Decl., Ex. A at

DEF 94; Uzoh Decl., Ex. 19 at DEF 118.) In any event, this is not a material fact.

72.     It is equally clear from the incident report and the ICAD that the plaintiff was not

one of the remaining "4 [MALE] PERPS" who reportedly fled towards 11th Street nor was he one

of the remaining males who tried to grab stuff but left the store with nothing after they realized

that Cuzco was looking at them. See id.

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support this assertion.

Rather, while the evidence cited referring to the ICAD correctly concludes that Plaintiff was not

one of the 4 male perpetrators who fled towards 11th Street (Pellegrino Decl., Ex. A at DEF 94),

the cited to evidence of the Urban Outfitter Shoplift Apprehension Case Profile Report, describes,

*inter alia*, that "[t]he other males were trying to grab stuff but they realized i was looking at them

and the tall male wearing the white and blue sweater with a blue Champion baseball cap with a

large H&M bag [*i.e.*, Plaintiff] grabbed a bunch of Kappa merchandises but of the the[sic] manger

was next to him and he gave it back to the manager." (See Uzoh Delc., Ex. 19 at DEF 018.) In any

event, what is written in the Urban Outfitter Shoplift Apprehension Case Profile Report are not

material facts.

73.     In any event, Cuzco merely identified the plaintiff to the police as an individual

who was simply present at the store. (MC Mar. Dep. at 92:20-94:1-18.)

**RESPONSE:**        Deny. The evidence cited by Plaintiff does not wholly support this assertion. Rather, the evidence cited refers to Cuzco's testimony where he, *inter alia*, testified that he positively identified the Plaintiff to the police, but did not testify that he told the police that Plaintiff was merely present inside of the store. Thus, it is immaterial whether Cuzco replied "no" after being asked, "[y]ou did not observe that person remove Tommy Hilfiger items, correct?" (Uzoh Delc., Ex. 9, at 94:10-18). Furthermore, Plaintiff fails to include additional testimony, where Cuzco agreed that he identified the male, wearing a white and blue sweater and who had with him an H&M bag "as being apart of the group of individuals who were involved in stealing some of the items from the Urban Outfitters." (See Uzoh Ex. 8 at 94:7-95:9; see also Uzoh Ex. 9 at 91:10-21.)

74.    Cuzco provided exactly the same information to Fernandez when he interviewed him at the precinct. (JF Dep. 56:22-80:1-2; Uzoh Decl., Ex. 20 at DEF 257.)

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support this assertion. Instead, the evidence cited by Plaintiff refers to Officer Fernandez's memo book entries and his testimony where he, *inter alia*,  (a) discusses his memo book entries and (b) testified that: (i) his memo book states, *i.e.*, that Plaintiff "'comes in, looks around with a group of guys. One of his friends grabbed panties/bras. And right under that it says, 'Kappa brand 200. Manager got it back,'" and that Cuzco told him this information; (ii) he does not remember if Cuzco was transported to the precinct; (iii) he did "not recall if another officer or myself interviewed him at the precinct. But I know I personally spoke to him at some point that day"; (iv) in the arrest report, he wrote, "Defendant did enter store and attempt to remove property"; and (v) he "was informed by the reporter/witness that Mr. Harry was one of the individuals in regards to that 911 call," that Cuzco further "informed [Officer Fernandez] that [Plaintiff] did enter the store and attempt to

remove property," and that "Mr. Harry, did enter the store with another amount of un-apprehended

individuals. And they did enter the store and attempt the remove the property without permission

or authority to do so." (Uzoh Decl., Ex. 5, at 56:22-80:1-2; see also Uzoh Decl., Ex. 20 at DEF

257.)

75.     According to notes of the interview entered by Fernandez in his memo book, Cuzco

stated that the plaintiff "comes in, looks around with a group of guys. One of his friends grabbed

panties/bras." (JF Dep. 63:7-9; Uzoh Decl., Ex. 20 at DEF 257.)

**RESPONSE:**          Admit that Officer Fernandez so testified. In any event, this is not a material

fact.

76.     Cuzco did also state "Kappa brand 200. Manager got it back." Id.

**RESPONSE:**          Admit that Officer Fernandez so testified. In any event, this is not a material

fact.

77.     At the time of the incident, May 21, 2018, Cuzco was employed by the store as a

Loss Prevention Officer. (MC Feb. Dep. at 11:20-12:1-18.)

**RESPONSE:**          Admit that Cuzco so testified. In any event, this is not a material fact.

78.     Cuzco continued to work for the store in the same capacity until sometime in

October 2020. See id.

**RESPONSE:**          Admit that Cuzco so testified. In any event, this is not a material fact.

79.     On or about November 2, 2020, Cuzco was employed by the City of New York

Police Department ("NYPD") as a police officer. (MC Feb. Dep. at 23:7-18.)

**RESPONSE:**          Admit that Cuzco so testified. In any event, this is not a material fact.

80.     Cuzco presently works for the NYPD in the same capacity as a police officer. (MC

Feb. Dep. at 33:21-10.)

**RESPONSE:**          Admit that Cuzco so testified. In any event, this is not a material fact.

81.     Notwithstanding the fact that Cuzco merely identified the plaintiff to the police as an individual who was merely present at the store, Torres informed Fernandez, Delissa, and the police that Cuzco positively identified the plaintiff as an individual who stole merchandise at the store. (JT Dep. 28:13-34:1-20.)

**RESPONSE:**          Deny. The evidence cited by Plaintiff does not wholly support this assertion. Instead, the evidence cited by Plaintiff refers to Officer Torres' testimony where she, *inter alia*, noted that she "obviously had conversation related to the person stopped [with Cuzco] but, again, I don't have specifics for you" and agreed that "[t]he arrest report […] and the complaint report, would […] contain the information provided by the complaining victim [*i.e.*, Cuzco] against the individual that was stopped" *i.e.*, Plaintiff. (Uzoh Decl., Ex. 7, at 28:13-34:1-20.) Furthermore, Plaintiff fails to include additional testimony, where Cuzco agreed that he identified the male, wearing a white and blue sweater and who had with him an H&M bag "as being apart of the group of individuals who were involved in stealing some of the items from the Urban Outfitters." (See Uzoh Ex. 8 at 94:7-95:9; see also Uzoh Ex. 9 at 91:10-21.)

82.     According to Delissa, immediately after Torres informed the police that Cuzco positively identified the plaintiff as an individual who stole merchandise at the store, Delissa directed Fernandez to handcuff the plaintiff. (JF Dep. at 54:17-55:1-14; SD Dep. at 76:3-8.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support this assertion. Instead, the evidence cited by Plaintiff refers to (a) Officer Fernandez's testimony that "[Plaintiff] was placed in handcuffs under arrest, after a positive show up was conducted" and (b) Sgt. Delisser's testimony that she "verified the arrest" by, "[o]nce the positive ID was made, [she] instructed my driver, Officer Fernandez, to place the individual under arrest given the

18

circumstances that we had on hand." (Uzoh Delc. Ex. 5 at 54:17-55:1-14; Uzoh Delc. Ex. 6 at 76:3-8.)

83.     With respect to Fernandez, he graduated from the Police Academy on or about December 28, 2016, and was essentially a rookie cop in training at the time of the plaintiff's arrest. (JF Dep. 10:14-11:1-2.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support this assertion. Indeed, there is no testimony that Officer Fernandez was a "rookie cop" and, instead, the evidence cited by Plaintiff refers to Officer Fernandez's testimony that he currently worked for the NYPD, began working as a police officer recruit on July 13, 2016, and graduated from the police academy on December 28, 2016. (Uzoh Delc. Ex. 5 at 10:14-11:1-2.) In any event, this is not a material fact.

84.     Prior to handcuffing the plaintiff, Fernandez took the H&M bag from the plaintiff. (RH Aff. ¶ 1; RH Dep. 56:18-57:1-10.)

**RESPONSE:**     Admit that Plaintiff so affirmed. (See Uzoh Delc. Ex. 2; see also Uzoh Delc. Ex. 4 at 56:18-57:1-10.) In any event, this is not a material fact.

85.     After handcuffing the plaintiff, Fernandez proceeded to perform a pat down search of the plaintiff. (RH Aff. ¶ 1; Am. Compl. at 3 ¶ 21.)

**RESPONSE:**     Deny. On June 21, 2019, Plaintiff testified in a 50H hearing that he had no memory of being searched or "anything like" a pat-down search occurring. (See Pl. 50-H. at 14:20-15:3, annexed to Pellegrino Decl. as Ex. I.)

86.     No stolen items or contraband was recovered from the plaintiff. (RH Aff. ¶ 1; RH 50h at 15:4-7; Am. Compl. at 3 ¶ 22.)

**RESPONSE:**     Deny. Plaintiff was in possession of a "booster bag." (See Uzoh Decl., Ex. 17; see also Uzoh Decl., Ex. 22.)

87.     Defendants also performed a search of the plaintiff at the precinct. (RH Aff. ¶ 1; RH 50h at 15:4-7; Am. Compl. at 3 ¶ 24.)

**RESPONSE:**     Deny. Plaintiff testified in a 50H hearing that he had no memory of being searched or "anything like" a pat-down search occurring. (See Pl. 50-H. at 14:20-15:3, annexed to Pellegrino Decl. as Ex. I.)

88.     No stolen items or contraband was recovered from the plaintiff. (RH Aff. ¶ 1; Am. Compl. at 3 ¶ 25.)

**RESPONSE:**     Deny. Plaintiff was in possession of a "booster bag." (See Uzoh Decl., Ex. 17; see also Uzoh Decl., Ex. 22.)

89.     Pursuant to the NYPD Patrol Guide, police officers are required to frisk/field search arrestees and also search them at the precinct. See NYPD Patrol Guide, Procedure No. 208-05, at 1.

**RESPONSE:**     Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). In any event, this is not a material fact.

90.     Eventually, Fernandez, working under Delissa's supervision, prepared paperwork documenting the arrest including, but not limited to, complaint and arrest reports -- with the reports charging plaintiff with the crimes which Delissa seems to attribute to the value of the reportedly stolen items. (JF Dep. at 18:16-19:1-15, 89:21-23; SD Dep. 85:9-88:1-10, 90:3-92:1-2; Uzoh Decl., Ex. 16-17.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support the assertion. Rather, the evidence cited referring to (a) Sgt. Delisser's testimony reflects that, *inter alia*, she testified that the basis for the grand larceny charge was "[t]he value. The total amount of what was taken determines the charge" in accordance with the Penal Code, and (b) the Arrest Report and

Omniform System Complaint reflecting that Plaintiff was charged with Grand Larceny in the Fourth Degree and that the value of the stolen items were in excess of $1,000.00.  (See Uzoh Decl. Ex. 6, 85:9-88:1-10, 90:3-92:1-2; see also Uzoh Decl., Ex. 16-17.)

91.     Delissa also prepared her own report charging the plaintiff with the same crimes. (Uzoh Decl., Ex. 15.)

**RESPONSE:**          Deny. The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence refers to an NYPD Stop Report, which is not a charging instrument. (See Uzoh Decl., Ex. 15.)

92.     Delissa reviewed and verified the paperwork prepared by Fernandez. (SD Dep. 85:9-12.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence refers Sgt. Delisser's testimony where she confirmed that she "verified" the arrest, not that she reviewed paperwork. (See Uzoh Decl., Ex. 6, 85:9-12.)

93.     Delissa verified the arrest and charges because she believed that the plaintiff matched the description she overheard on the police radio, was identified by Cuzco as someone who was at the store, and based on the value of the items that were reportedly stolen from the store. (SD Dep. 85:13-86:1-15.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence refers to Sgt. Delisser's testimony where she testified that she "verified based on the description that came over, the individual that matched the description, and the complainant that was brought to the scene positively identifying the person that was later arrested" and that she verified the grand larceny charge because of "[t]he value. The total amount of what was taken determines the charge." (See Uzoh Decl., Ex. 6, 85:13-86:1-15.)

94.     Delissa did not speak with Fernandez who interviewed Cuzco concerning the interview, did not interview Cuzco herself, and did not bother to find out what actually happened at the store. (SD Dep. 85:9-88:1-10.)

**RESPONSE:**        The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence refers to Sgt. Delisser's testimony where she testified that she "did not speak to the complainant in regards to what was removed," that she was "told by central that there were items removed from the location," and "[i]n [her] experience," what was "supposed to take place" was that the officers that she supervised spoke with the complainant. (See Uzoh Decl., Ex. 6, 85:9-88:1-10.) In any event, this is not a material fact.

95.     On the same day, May 21, 2028,[4] Fernandez forwarded the paperwork he and Delissa prepared documenting the arrest including, but not limited to, the complaint report, the arrest report, and the stop and frisk report to the prosecutors. (JF Dep. 21:11-1-9; CM Dep. at 22:1-25:1-4.)

**RESPONSE:**        Deny that the cited-to testimony supports Plaintiff's assertion that the "stop and frisk report" was forwarded to prosecutors and on which date any documents were forwarded. Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d) concerning whether Sgt. Delisser prepared arrest paperwork. Further, the evidence cited by Plaintiff does not wholly support the assertion concerning what documents were forwarded by Officer Fernandez to the District Attorney's Office. Instead, the cited to testimony refers to (a) Officer Fernandez's testimony that (at least in part, since it is unclear where Plaintiff's citation ends) he "d[id]n't remember all of the documents. But some of the documents that [he] d[id] remember, [he] mentioned here today, as far as the criminal complaint report

---

[4] Defendants understand "May 21, 2028" to be a typo and that Plaintiff intended to write "May 21, 2018."

worksheet, the online booking arrest sheet and the property clerk invoice. It could be more, but [he] just d[id]n't remember at this time" (see Uzoh Decl., Ex. 5, JF Dep. at 21:11-1-9) and (b) Assistant District Attorney ("ADA") Charles Manfredi's testimony that he "do[es]n't recall about this particular case" and testified as to what "normally" may occur in his experience. (See Uzoh Decl., Ex. 11, CM Dep. at 22:1-25:1-4.)

96.     Also, on the same day, May 21, 2028,[4] Fernandez provided additional information to the prosecutors by telephone. (JF Dep. 21:6-10, 92:3-17, 93:19-94:1-5; CM Dep. at 22:1-25:1-4.)

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to testimony refers to Officer Fernandez's testimony where he (a) responded "yes" to the question of whether he "provide[d] information to the DA's office at any point in time"; and (b) testified that he spoke with someone from the DA's office "with regards to this case" and that he "provid[ed] information relating to this incident." (See Uzoh Decl., Ex. 5, JF Dep. at 21:6-10, 92:3-17, 93:19-94:1-5.) Furthermore, the cited to testimony of ADA Manfredi's testimony regards, *inter alia*, his testimony that "it looks like" he obtained information from Officer Fernandez but that "[he] d[id]n't have any recollection of speaking to officers in the case," including the arresting officer. (See Uzoh Decl., Ex. 11, CM Dep. at 22:1-25:1-4.) In any event, this is not a material fact.

97.     Fernandez provided the additional information to Assistant District Attorney Charles Manfredi who screened the case at the New York County District Attorney's office. (CM Dep. at 23:9-24:1-10; Uzoh Decl., Ex. 21.)

**RESPONSE:**     The evidence cited by Plaintiff does not support the assertion. Instead, the cited to evidence refers to ADA Manfredi's testimony where he testified that "it looks like" he

obtained information from Officer Fernandez. (See Uzoh Decl., Ex. 11, CM Dep. at 23:9-24:1-10.) However, Plaintiff fails to include additional testimony, where ADA Manfredi testified that "[he] d[id]n't have any recollection of speaking to officers in the case," including the arresting officer. (See Uzoh Decl., Ex. 11, CM Dep. at 24:21-25:4.) Furthermore, the cited to evidence does not corroborate the assertion that the case was screened physically at the New York County District Attorney's office. (See Uzoh Decl., Ex. 11, CM Dep. at 24:21-25:4; see also Uzoh Decl., Ex. 21.) In any event, this is not a material fact.

98.      According to the Datasheet prepared by ADA Manfredi documenting information he received from Fernandez during the May 21, 2018 screening/telephone call, Fernandez informed the prosecutors that Cuzco observed the plaintiff and five other individuals enter the store, and that he observed one of the individuals that was with the plaintiff "put 7 panties, 7 bras, 2 bikinis, 19 shorts into an H&M bag" while the plaintiff himself grabbed Kappa but the "manager got some of it back", and that the plaintiff and "four others fled the store" thereafter. (Uzoh Decl., Ex. 21 at DEF 27.)

**RESPONSE:**      The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence of the Datasheet notes that, *inter alia*, "LPO observed D and five others enter the store," "one individual that was with D put 7 panties, 7 bras, 2 bikinis, 19 shorts into an H&M bag," "D attempted to grab Kappa, manager got some of it back," "D and four others fled the store," "LPO calls 911, provides description," "AO finds D going e/b on east 14 street, D holding H&M bags in hand lined with aluminum foil," "AO stops, PO Torres brings LPO to location," and "LPO positively IDs D." (See Uzoh Decl., Ex. 21.) Furthermore, the Datasheet does not explicitly state that Fernandez provided the information. (See id.)

99.     According to the Datasheet, Fernandez also informed the prosecutors that he later apprehended the plaintiff and recovered "H&M bags . . . lined with aluminum foil" from him. Id.

**RESPONSE:**     The evidence cited by Plaintiff does not wholly support the assertion. Instead, the cited to evidence of the Datasheet notes that, *inter alia*, "AO finds D going e/b on east 14 street, D holding H&M bags in hand lined with aluminum foil." (See Uzoh Decl., Ex. 21.) Furthermore, the Datasheet does not explicitly state that Fernandez provided the information. (See id.)

100.     Fernandez further informed the prosecutors that none of the stolen items were recovered including, but not limited to, the remaining Kappa which the manager did not recover. See id.

**RESPONSE:**     Deny. The evidence cited by Plaintiff does not support the assertion. Instead, the cited to evidence of the Datasheet notes that, *inter alia*, "D attempted to grab Kappa, manager got some of it back" and "Recovery: No." (See Uzoh Decl., Ex. 21.) Furthermore, the Datasheet does not explicitly state that Fernandez provided the information. (See id.)

101.     Additionally, Fernandez informed the prosecutors that Cuzco provided him with photos "of other unapprehended individuals" and indicated that the plaintiff made a statement to the effect that "I didn't do anything" at approximately 4:46 p.m., after he was apprehended by Delissa. Id.

**RESPONSE:**     The evidence cited by Plaintiff does not support the assertion. Instead, the cited to evidence of the Datasheet notes, *inter alia*, "Photos: Yes. of other unapprehended individuals" – and does not clarify whether the police were in possession of the alleged photos – and "Statements: I didn't do anything 16:48." (See Uzoh Decl., Ex. 21.) Furthermore, the

Datasheet does not explicitly state that Fernandez provided the information. (See id.) In any event, this is not a material fact.

102.    The prosecutors did not contact nor speak with Cuzco. (MC Feb. Dep. at 62:16-25; MC Mar. Dep. at 5:21-6:1-11, 83:17-84:1, 86:21-88:1-5; Uzoh Decl., Ex. 21 at 28.)

**RESPONSE:**        Deny. The evidence cited by Plaintiff does not support the assertion. Instead, the cited to evidence of the Datasheet notes that, *inter alia*, the civilian witness was the "LPO," *i.e.*, Cuzco, and does not explicitly state whether individuals from DANY spoke with Cuzco. (See Uzoh Decl., Ex. 21 at DEF 028.) Notably, the evidence in the record shows that on June 9, 2018, complaining witness Cuzco signed a Supporting Deposition, which was purportedly drafted by DANY, attesting that he read the Accusatory Instrument and "that the facts therein stated to be on information furnished by [him] are true upon [his] personal knowledge." (See Cuzco Sup. Dep, at DEF 0255, annexed to Pellegrino Decl. as Ex. K.) Further, the cited to evidence of Cuzco's February testimony refers to Cuzco's testimony that he did not recall whether he had "any discussion with the DA's office." (Uzoh Decl., Ex. 8, MC Feb. Dep. at 62:16-25.) Further, during his March testimony, Cuzco testified that (a) he did not believe so, but could not recall if he had a conversation with anyone from the DA's Office concerning this case, (b) he could not "recall any calls" with the DA's Office on May 21, 2018, and (c) the signature on his June 9, 2018 Supporting Deposition looks like his signature, but he just does not remember signing the document. (Uzoh Decl., Ex. 8, MC Mar. Dep. at 5:21-6:1-11, 83:17-84:1, 86:21-88:1-5.) Furthermore, Plaintiff fails to include evidence that, on June 9, 2018, complaining witness Cuzco signed a Supporting Deposition, attesting that he read the Accusatory Instrument and "that the facts therein stated to be on information furnished by [him] are true upon [his] personal knowledge." (See June 9, 2018

Cuzco Sup. Dep., concerning Docket No. 2018NY023579 at DEF 0255, annexed to Pellegrino Decl. as Exhibit K.)

103.    Based on the documents and information provided by Fernandez and Delissa, the prosecutors prepared the Accusatory Instrument or criminal court complaint sworn to by Fernandez dated May 21, 2018, falsely charging the plaintiff with N.Y. PL 155.25 'Petit larceny' and N.Y. PL 140.35 'Possession of burglar's tools'. (JF Dep. at 101:5-104:1-14; Uzoh Decl., Ex. 22; Am. Compl. at 4 ¶¶ 31-33.)

**RESPONSE:**        Deny. The evidence cited by Plaintiff does not support the assertion that "[b]ased on the documents and information provided by" Delissa, "the prosecutors prepared the Accusatory Instrument or criminal court complaint sworn to by Fernandez dated May 21, 2018, falsely charging the plaintiff with N.Y. PL 155.25 'Petit larceny' and N.Y. PL 140.35 'Possession of burglar's tools.'" (See Uzoh Decl., Ex. 5, JF Dep. at 101:5-104:1-14; see also Uzoh Decl., Ex. 22.) Instead, the cited to evidence refers to (a) Officer Fernandez's testimony where he testifies about the Criminal Court Complaint and noted that, *inter alia,* the DA's Office prepared the document and that information that "was informed to [Officer Fernandez] by the reporter/witness," he "relayed that information to the DA's office"; and (b) the Criminal Court Complaint, which notes, *inter alia*, that Officer Fernandez was "informed by Michael Cuzco." (See Uzoh Decl., Ex. 5, JF Dep. at 101:5-104:1-14; see also Uzoh Decl., Ex. 22, Crim. Ct. Compl.) Furthermore, Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d) concerning whether Sgt. Delisser prepared the documents and whether there were false charges. In addition, Plaintiff's citation to the Amended Complaint is impermissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d).

104.    On May 22, 2018, the plaintiff was arraigned on the Accusatory Instrument or criminal court complaint sworn to by Fernandez. (Uzoh Decl., Ex. 22.)

**RESPONSE:**          The evidence cited by Plaintiff does not wholly support the assertion. Rather, the cited evidence is merely to a Criminal Court Complaint, which reflects that Officer Fernandez signed the Criminal Court Complaint on May 21, 2022. (See Uzoh Decl., Ex. 22, Crim. Ct. Compl.) Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d) concerning Plaintiff's arraignment.

105.    Upon arraignment, plaintiff was released on his own recognizance but was required to return to the criminal court to defend the false charges levied against him by defendants. (Am. Compl. at 4 ¶ 34; Uzoh Decl., Ex. 23-24.)

**RESPONSE:**          Deny in part. The cited to evidence does not support the assertion that there were "false charges levied against" Plaintiff. In addition, Plaintiff's citation to the Amended Complaint is impermissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d).

106.    Plaintiff appeared before the criminal court on multiple occasions to defend the false charges levied against him by defendant officers. (Am. Compl. at 4 ¶ 35; Uzoh Decl., Ex. 24.)

**RESPONSE:**          Deny in part. The cited to evidence does not support the assertion that there were "false charges levied against" Plaintiff. In addition, Plaintiff's citation to the Amended Complaint is impermissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d).

107.    On February 6, 2019, the false charges levied against plaintiff were summarily dismissed by the criminal court upon motion filed by the prosecutors on the bases that "the case cannot be proven beyond a reasonable doubt." (Am. Compl. at 4 ¶ 36; Uzoh Decl., Ex. 25.)

**RESPONSE:**         Deny in part. The cited to evidence does not support the assertion that there were "false charges levied against" Plaintiff. In addition, Plaintiff's citation to the Amended Complaint is impermissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d).

108.    On or about April 17, 2019, following the dismissal of the charges against the plaintiff, plaintiff timely filed and served a notice of claim dated April 17, 2019, upon the Comptroller of the City of New York. (Am. Compl. at 2 ¶ 4.)

**RESPONSE:**         Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). In any event, this is not a material fact.

109.    It is the widespread policy of police officers assigned to the City of New York Police Department to charge all members of a group with a crime when only one group member is alleged to have committed any such crime. (Am. Compl. ¶¶ 80-88.) See Jones v. City of New York, 603 Fed. Appx. 13 (2d Cir. 2015).

**RESPONSE:**         Plaintiff fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). In any event, this is not a material fact.

110.    Defendant City has failed to train defendant officers and has failed to instill in them the fact that they lack probable cause to arrest an individual such as the plaintiff who was merely a customer browsing the store and did not have any knowledge of, nor participated in, any crime at the store. See id.

**RESPONSE:**         Deny. Plaintiff was not a "a customer browsing the store [who] did not have

any knowledge of, nor participated in, any crime at the store" and, instead, officers were informed

that the complaining witness identified Plaintiff as the male, wearing a white and blue sweater and

who had with him an H&M bag, *i.e.*, as one of the perpetrators. (See Cuzco Feb. Dep. at 94:7-

95:9, annexed to Pellegrino Decl. as Ex. F; see also Cuzco March Dep. at 91:10-21, annexed to

Pellegrino Decl. as Ex. G; see also Delisser Dep. at 47:20-48:13, annexed to Pellegrino Decl. as

Ex. C; see also ICAD at DEF 096, annexed to Pellegrino Decl. as Ex. A.) In addition, Plaintiff

fails to cite to any admissible evidence pursuant to Federal Rule of Civil Procedure 56(e) and Local

Civil Rule 56.1(d).

111.    The Court should deny Defendants' motion for summary judgment in its entirety.

**RESPONSE:**         Plaintiff fails to set forth facts or cite to any admissible evidence pursuant

to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d). In any event, this is an

inappropriate legal assertion and not a material fact.

Dated:        New York, New York
              October 11, 2022

                                         HON. SYLVIA O. HINDS-RADIX
                                         Corporation Counsel of the City of New
                                         York
                                         *Attorney for Defendants City, Delisser,*
                                                 *Fernandez, and Torres*

                              By:        /s/  *Nicolette Pellegrino*
                                         Nicolette Pellegrino
                                         *Assistant Corporation Counsel*
                                         Special Federal Litigation Division
                                         100 Church Street, Room 3-194
                                         New York, New York 10007
                                         (212) 356-2338

CC:     VIA E.C.F.
        Ugo Uzoh, Esq.
        *Attorney for Plaintiff*